IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Big Stone Gap Division

| | |
|---|---|
| **RED RIVER COAL COMPANY, INC.**<br><br>            Plaintiff,<br><br>     v.<br><br>**THE SIERRA CLUB, APPALACHIAN VOICES, and**<br>**SOUTHERN APPALACHIAN MOUNTAIN STEWARDS,**<br><br>            Defendants. | Civil Action No: 2:17CV21 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.      Plaintiff Red River Coal Company, Inc. ("Plaintiff" or "Red River") brings this action against the Sierra Club, Appalachian Voices, and Southern Appalachian Mountain Stewards (collectively, "Defendants"). Defendants are environmental advocacy groups that seek to unlawfully punish Red River through initiation of a citizen suit for alleged violations of the Clean Water Act ("CWA") and the Surface Mining Control and Reclamation Act ("SMCRA"). In its notice of intent to file a citizen suit, Defendants claim that Red River is violating the CWA, SMCRA and associated regulations and permits at its North Fox Gap Surface Mine in Wise County, Virginia.

2.      Defendants' threatened citizen suit is part of a persistent campaign to penalize Red River on the basis of novel theories of liability that are fundamentally inconsistent with those of the Virginia Department of Mines, Minerals and Energy ("DMME"), which is the

31542474v1

regulatory agency with responsibility for overseeing Red River's permitting and compliance. The same Defendants previously asserted CWA violations against this and other Red River mines in 2014 litigation, and *res judicata* bars Defendants' threatened citizen suit.

3. *Res judicata* notwithstanding, Red River has not violated the CWA, SMCRA, or the associated regulations and permits. First, Red River does not violate the CWA, as alleged by Defendants, by allowing groundwater to flow beneath its hollow fills via underdrains. The CWA's permitting system does not extend to discharges of groundwater. Second, the alleged sources of pollution, underdrains and associated hollow fills, are not "point sources" and thus not subject to regulation under the CWA. DMME's Division of Mined Land Reclamation ("DMLR") has never required underdrains and associated hollow fills to be permitted under the CWA. Third, as confirmed by DMLR, Red River is not in violation of its CWA permit, and therefore is not in violation of the CWA, SMCRA, or their associated regulations. DMLR's determination is entitled to special deference.

4. A real and justiciable controversy exists between Red River and Defendants over whether (1) Defendants may pursue their threatened claims against Red River, and (2) whether Red River is in compliance with the CWA, SMCRA, and associated regulations.

## THE PARTIES

5. Plaintiff Red River is a Virginia Corporation doing business in Wise County, Virginia. Red River owns and operates the North Fox Gap Surface Mine in Wise County, which is the subject of this litigation.

6. Defendant Sierra Club is a nonprofit environmental advocacy group with approximately 18,000 members who reside in Virginia and belong to its Virginia Chapter. The Virginia Chapter has permanent offices in Richmond, Norfolk, and Reston, with numerous local

affiliates throughout the Commonwealth.

7. Defendant Appalachian Voices is a nonprofit environmental advocacy group with members in North Carolina, Virginia and Tennessee, that maintains permanent offices in Norton and Charlottesville, Virginia.

8. Defendant Southern Appalachian Mountain Stewards ("SAMS") is a Virginia nonprofit environmental advocacy group with an office in Appalachia, Virginia.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because this action arises under the laws of the United States, including the CWA, 33 U.S.C. §§ 1251, *et seq.*, and SMCRA, 30 U.S.C. §§ 1201, *et seq.*

10. This Court also has jurisdiction over petitions seeking declaratory judgments in a case or actual controversy and may order further relief, including injunctive relief, based on a declaratory judgment. Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202. Defendants' notice threatening to sue Red River for alleged ongoing violations of the CWA and SMCRA, which Red River denies, creates an actual, justiciable controversy. Defendants threaten to pursue civil penalties and injunctive relief for the alleged violations.

11. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial District and Division. 28 U.S.C. § 1391(b) and W.D. Va. Gen. R. 2(b).

## STATUTORY AND REGULATORY FRAMEWORK

12. **The Surface Mining Control and Reclamation Act ("SMCRA").** Under SMCRA, state and federal agencies share responsibility for the regulation of surface coal mining.

*Bragg v. W.Va. Coal Ass'n*, 248 F.3d 275, 288 (4th Cir. 2001). Provided that state regulatory programs satisfy SMCRA's minimum requirements, states have "exclusive jurisdiction over the regulation of surface coal mining and reclamation operations." 30 U.S.C. §1253. DMME is Virginia's federally-approved regulatory agency with the authority to issue surface coal mining permits. 30 C.F.R. § 946.10; 46 Fed. Reg. 61,088 (Dec. 15, 1981). Within DMME, DMLR oversees the reclamation process.

13. Most of the rock removed during surface mining operations is returned to the mined area to achieve its original topography. *See Bragg*, 248 F.3d at 286. Remaining excess rock, or overburden, is typically placed in the upper reaches of valleys in the form of valley fills (also known as hollow fills), the construction of which is regulated by SMCRA. *See* 4 Va. Admin. Code § 25-130-816.72; *id.* at § 25-130-816.71; 30 C.F.R. § 816.71.

14. SMCRA prohibits surface coal mine operators from discharging water or other materials unless they demonstrate that such discharges will be made in a manner that "prevent[s] material damage to the hydrologic balance outside the permit area." 4 Va. Admin. Code § 25-130-816.41. Further, any discharge from areas disturbed by surface mining activities must be "made in compliance with all applicable water quality laws and regulations . . . " 30 C.F.R. § 816.42. *See also* 4 Va. Admin. Code § 25-130-817.42. Thus, water flowing from active surface mining areas must pass through sediment control structures, such as sedimentation ponds or impoundments, which are frequently constructed below hollow fills. 30 C.F.R. §§ 816.45-46.

15. In constructing these hollow fills, federal and state regulations also require the construction of underdrains when the disposal area contains springs, natural or manmade water courses, or wet weather seeps, and impose conditions on the drainage control requirements of underdrains. 30 C.F.R. § 816.71; 4 Va. Admin. Code § 25-130-816.72.

16. The regulations prohibit the permanent retention of impounding structures from being part of an approved postmining land use. 4 Va. Admin. Code § 25-130-816.84. In other words, as part of the reclamation process, the sedimentation ponds used during active mining must be removed.

17. During the reclamation process, hollow fills are revegetated. Then, based on successful water quality monitoring results, the sedimentation ponds are removed.

18. To ensure that surface mines are properly reclaimed and revegetated, Virginia requires permit holders to post a reclamation bond. *See id.* at § 25-31-220.

19. A mining operator who abandons a surface mine without completing reclamation forfeits this bond. *Id.* at § 25-31-310. Once all reclamation requirements are satisfied, DMME may grant a mining operator a full bond release. *Id.* at § 25-31-280.

20. Removal of sedimentation ponds at hollow fills is part of the reclamation process in order for bonds to be released.

21. **The Clean Water Act ("CWA").** Surface mine operators must also obtain two types of CWA permits to construct a hollow fill: a CWA § 404 permit, issued by the U.S. Army Corps of Engineers, that authorizes both the construction of the hollow fill and the construction of the downstream sedimentation pond; and a National Pollutant Discharge Elimination System ("NPDES") permit pursuant to CWA § 402 (33 U.S.C. § 1342) for discharges from the sedimentation pond to downstream surface waters.

22. NPDES permits authorize "discharges of pollutants" to navigable waters from a "point source." 33 U.S.C. §§ 1342, 1362(12). A "point source" is defined as "any discernible, confined and discrete conveyance" from which pollutants are or may be discharged. 33 U.S.C. §

1362(14). Discharges of water from sedimentation ponds through a pipe or spillway into "waters of the United States" are considered "point source" discharges and require a NPDES permit.

23. "Discharge of a pollutant" means "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. §1362(12). Under the CWA, navigable waters is "a defined term, and the definition is simply 'the waters of the United States.'" *Rapanos v. United States*, 547 U.S. 715, 730-31 (2006), quoting 33 U.S.C. § 1362(7).

24. Groundwater is not included in the federal definition of "waters of the United States" and is thus beyond the federal regulatory jurisdiction of the CWA. See *Rapanos*, 547 U.S. at 734 ("[t]he plain language of the Act simply does not authorize [a] 'Land is Waters' approach to federal jurisdiction"); *see also* Environmental Protection Agency ("EPA") and the U.S. Army Corps of Engineers' Preamble to the Clean Water Rule (stating that "the rule excludes . . . groundwater, which the agencies have never interpreted to be a 'water of the United States' under the [Act]."). 80 Fed. Reg. 37,054, 37,073 (June 29, 2015). The Clean Water Rule was appealed and the U.S. Court of Appeals for the Sixth Circuit stayed implementation of the rule in October 2015. *In re E.P.A.*, No. 15-3799, 2015 WL 5893814, at *4 (6th Cir. Oct. 9, 2015). The Clean Water Rule remains relevant to this case because it reflects the broadest definition of "waters of the United States" ever promulgated by the federal government, and even so, it excludes groundwater.

25. The CWA authorizes EPA to delegate to states the authority to administer their own NPDES programs to govern discharges within their borders, subject to EPA approval. *See* 33 U.S.C. § 1342(b). *See also Ohio Valley Envtl. Coal. v. Miano*, 66 F. Supp. 2d 805, 807 (S.D. W.Va. 1998) ("[t]he federal NPDES program allows a state to take control of the permitting

process within its borders, so long as it complies with the federal standards set forth by the Clean Water Act and the regulations promulgated under that act.").

26.  State NPDES programs must be approved by EPA before a state may issue NPDES permits.  33 U.S.C. § 1342(c).  Virginia has had an EPA-approved NPDES program since April 1975.  The Virginia State Water Control Board ("SWCB") issues Virginia NPDES permits.  Va. Code § 62.1-44.15(5). By separate delegation of authority, DMME has the sole authority to issue, amend, enforce and release NPDES permits for coal surface mining operations.  Va. Code § 45.1-254(A).

27.  During the process of reclamation and bond release, sedimentation ponds below hollow fills must be removed and any associated discharge points must in turn be released from NPDES permit coverage.  *See* Exhibit A, DMLR Procedure No. 3.3.16, Procedural Manual Excerpt regarding Sediment Pond Effluent Limits/Removal.

28.  Once the sedimentation pond associated with a hollow fill has been removed, the NPDES compliance point associated with the sedimentation pond is also removed and there is no longer a point source under the CWA.

## FACTS

29.  Red River's North Fox Gap Surface Mine is a 694 acre mine in Wise County, Virginia which opened in 1992.

30.  The North Fox Gap Surface Mine historically employed approximately 75 local residents and historically sold approximately 250,000 tons of coal per year.

31.  The North Fox Gap Surface Mine first received its Joint Virginia Coal Surface Mining Operation ("CSMO")/NPDES Permit 1101401/0081401 on January 16, 1992, and this permit has been renewed and reissued at regular intervals since then.

32. Discharges from the North Fox Gap Surface Mine are to Rat Creek and the South Fork Pound River.

33. Red River's mining operations entail the remining of previously mined areas which were mined prior to the enactment of SMCRA in 1977. In order to conduct mining on previously mined areas, Red River had to demonstrate that its remining operations would result in improved water quality consistent with 4 Va. Admin. Code § 25-130-785.19(d). DMLR supports remining as a beneficial way to improve water quality in the coalfields. *See* Exhibit B, O'Quinn Decl. ¶ 11. Congress also supports this practice as evidenced by the 1987 Rahall Amendment to the CWA in CWA § 301(p), which incentivizes the remining and reclaiming of pre-SMCRA mines.

34. Red River's coal mining operations include the placement of mining refuse into hollows fills, as well as backfilling and regrading areas disturbed prior to SMCRA.

35. Hollow fills and associated underdrains on the site were constructed and numbered 1-8. The underdrains, located beneath the fills, enable groundwater to flow down the natural topography of the land without impacting the fills' stability. Along the ridge lines above the fills, trenches prevent any surface waters or precipitation from flowing into the fill (as required by 4 Va. Admin. Code § 25-130-816.72) such that underdrains simply facilitate the natural movement of percolating groundwater across a valley as if a fill were not present.

36. Consistent with DMLR's Procedure No. 3.3.16, during the reclamation process, after the required monitoring results were achieved, Red River sought, and was granted by DMLR, the right to remove the sedimentation ponds and their associated NPDES permit outfalls.

37. In a letter dated January 5, 2015, DMLR confirmed the status of these sedimentation pond removals. *See* Exhibit C.

38. On February 26, 2015, DMLR approved the removal of sediment ponds 1-6 and 9, which were associated with underdrains 1-6, as well as the removal or relocation of several outfalls. *See* Exhibit B, O'Quinn Decl. ¶ 13.

39. Red River previously held a separate NPDES permit for discharges from the sediment pond receiving drainage from underdrain 8 and its associated hollow fill. That pond was removed and the permit was released in March 2007.

40. As the reclamation process at the North Fox Gap Surface Mine has progressed, Defendants have repeatedly interfered with Red River, including through a lawsuit related to the present case, *S. Appalachian Mt. Stewards v. Red River Coal Co.*, No. 2:14CV00024, 2015 U.S. Dist. LEXIS 48483 (W.D. Va. Apr. 13, 2015). In that lawsuit, as in the present one, Defendants alleged novel theories of liability that were fundamentally inconsistent with those of the DMLR.

41. During the prior lawsuit, Defendants conceded they could not show ongoing violations where sedimentation ponds and associated outfalls for hollow fills had been removed, thus eliminating their status as "point sources" subject to the CWA. As a result, Defendants did not move for summary judgment on claims related to these removed sedimentation ponds.

42. In an April 15, 2015 opinion, this Court granted Red River's Motion for Summary Judgment, relying on and deferring to findings by DMLR that Red River was in compliance with its permits.

43. Undeterred by the outcome of the prior lawsuit, Defendants have continued to seek information regarding Red River's operations and pursue additional, novel theories of liability.

44. On May 30, 2017, Defendants mailed a 60 Day Notice of Intent Letter to Mr. Mike Thomas, announcing their plans to pursue a citizen lawsuit in federal court for alleged

CWA and SMCRA violations associated with discharges from underdrains and hollow fills ("Notice").  The Notice was received on June 5, 2017.  *See* Exhibit D.

45.     The Notice alleges that underdrains 1-6 and 8 are unpermitted point sources under the CWA.  The Notice claims that discharges from these underdrains contain high levels of total dissolved solids, ionic chemicals, and conductivity which flow into unnamed tributaries of the South Fork Pound River.  Defendants allege in the Notice that these discharges violate Section 301 of the CWA.

46.     Defendants also allege SMCRA violations associated with federal performance standards that require all discharges from permitted mining operations to be made in compliance with all applicable State and Federal water quality laws and regulations.  Defendants claim that Red River's discharges from underdrains 1-6 and 8 into the South Fork Pound River, Rat Creek, and unnamed tributaries of those waterbodies violate the narrative water quality standards for protection of aquatic life.

47.     Additionally, Defendants claim that Red River has violated SMCRA's prohibition on material damage to the hydrologic balance beyond the permit boundary.

48.     Despite its diligent efforts to comply with Virginia regulatory requirements for reclamation under the CWA and SMCRA, Red River now faces the threat of another citizen suit by Defendants based on another novel interpretation of the CWA.

## CLAIMS FOR RELIEF

**Count One:
Declaratory Judgment That Defendants are Barred
from Bringing Their Threatened Citizen Suit by *Res Judicata***

49.     Red River re-alleges and incorporates by reference the allegations in Paragraphs 1 through 48 of the Complaint as if fully set forth herein.

50. *Res judicata*, or claim preclusion, generally "bars a party from suing on a claim that has already been 'litigated to a final judgment by that party or such party's privies and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action.'" *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009) (internal citation omitted). For *res judicata* to apply, "three elements must be present: '(1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action.'" *Id.*, quoting *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 42 (4th Cir. 1990).

51. While jurisprudence has traditionally required that the judgment in the first case be a "final judgment" or a "judgment on the merits," it is more accurate to state that "'in the first litigation there was an opportunity to get to the merits.'" *Medina v. I.N.S.*, 993 F.2d 499, 503 (5th Cir. 1993) (internal citation omitted) (barring a deportation proceeding where a deportee's United States citizenship was previously conceded by the government, even though an immigration judge never actually determined deportee's citizenship). *See also, e.g., Aracoma Coal Co.*, 556 F.3d at 210-22 ("[e]ven claims that were not raised in the original suit may be precluded if they arose from the same transaction or occurrence as those raised in the first suit and were available to plaintiff at the time of first suit").

52. Defendants filed a citizen suit against Red River on June 5, 2014, alleging violations of the CWA at multiple mines, including the North Fox Gap Surface Mine, the same mine which is the subject of Defendants' new threatened citizen suit.

53. In the 2014 citizen suit, Defendants asserted that Red River was not complying with provisions of several Joint CSMO/NPDES Permits, including Permit 1101401/0081401, the same permit which is the subject Defendants' new threatened citizen suit.

54. In the earlier litigation, Red River provided evidence to Defendants that it had removed the sedimentation ponds at the North Fox Gap Surface Mine and the associated outfalls from Joint CSMO/NPDES Permit 1101401/0081401. Defendants acknowledged removal of the ponds and conceded that they could not show ongoing CWA violations at the North Fox Gap Surface Mine, which this Court noted in its opinion. Defendants chose not to amend their complaint, but rather elected not to move for summary judgment on the alleged violations of Joint CSMO/NPDES Permit 1101401/0081401. *See S. Appalachian Mt. Stewards*, 2015 U.S. Dist. LEXIS 48483, at *1 n.1 ("[Defendants] alleged in their Complaint that Red River had violated the NPDES permits at four of its coal mines. Thereafter, Red River provided plaintiffs with evidence that the discharge points supporting Plaintiff's allegations as to three of the permits have been removed. Therefore, [Defendants] move for summary judgment solely for ongoing violations in relation to the one remaining permit.").

55. Red River, however, moved for summary judgment on the entire case, including the alleged violations that Defendants' did not pursue in their Motion for Summary Judgment. *See S. Appalachian Mt. Stewards*, 2015 U.S. Dist. LEXIS 48483, at *1 ("Plaintiffs seek at this point a declaration and order from the court enjoining future violations of Red River's permit, with civil penalties to be later determined; Red River seeks judgment in its favor on the whole case.")

56. This Court ultimately granted summary judgment in favor of Red River "on the whole case," including the alleged violations of Joint CSMO/NPDES Permit 1101401/0081401 at the North Fox Gap Surface Mine.

57. Defendants are again attacking Red River based on alleged violations of the CWA at its North Fox Gap Surface Mine related to alleged discharges from several hollow fills and

associated underdrains.  Defendants also allege SMCRA violations based on the same discharges.

58. Defendants were well aware that when the sedimentation ponds and associated outfalls were removed, the hollow fills and underdrains would remain and would, as designed, continue to facilitate the removal of groundwater and precipitation from the hollow fills.  In short, Defendants should have raised the CWA and SMCRA claims threatened in their Notice during the prior litigation.

59. A real, justiciable controversy exists between Red River and Defendants over whether the claims threatened in the Defendants' Notice are barred by *res judicata*.

60. A declaratory judgment will advance the purposes of the Declaratory Judgment Act by settling a real and concrete controversy over whether Defendants' threatened claims are barred by *res judicata*.

### Count Two:
### Declaratory Judgment That the Clean Water Act
### Does Not Regulate Discharges of Groundwater

61. Red River re-alleges and incorporates by reference the allegations in Paragraphs 1 through 60 of the Complaint as if fully set forth herein.

62. The underdrains at the North Fox Gap Surface Mine allow percolating groundwater to flow beneath the hollow fills and down the natural topography of the land in a manner that does not impact the fill's stability.  Red River installed these underdrains beneath its hollow fills as required by Virginia regulations.

63. Defendants assert in their Notice that unpermitted discharges of allegedly polluted groundwater violate the CWA because the groundwater makes its way into surface waters.

64. The CWA does not regulate groundwater, even if that groundwater may reach

surface waters. *See, e.g., Chesapeake Bay Found., Inc. v. Severstal Sparrows Point*, 794 F. Supp. 2d 602, 619-20 (D. Md. 2011) ("[d]ischarge from migrations of groundwater or soil runoff is not point source pollution, however, but nonpoint source pollution. There is no basis for a citizen suit for nonpoint source discharges under the CWA"); *Sierra Club v. El Paso Gold Mines*, 421 F.3d 1133, 1140 n.4 (10th Cir. 2005) ("[g]roundwater seepage that travels through fractured rock would be nonpoint source pollution, which is not subject to NPDES permitting").

65. A real, justiciable controversy exists between Red River and Defendants over whether the CWA regulates groundwater that flows through the underdrains.

66. A declaratory judgment will advance the purposes of the Declaratory Judgment Act by settling real and concrete controversy over whether the CWA regulates groundwater that flows through the underdrains.

**Count Three:**
**Declaratory Judgment That the Underdrains and Hollow Fills**
**at the North Fox Gap Surface Mine are Not Unpermitted Point Sources**

67. Plaintiff re-alleges and incorporates by reference the allegations in Paragraphs 1 through 66 of the Complaint as if fully set forth herein.

68. NPDES permits authorize "discharges of pollutants" to navigable waters from a "point source." 33 U.S.C. § 1342, 1362(12). A "point source" is defined as "any discernible, confined and discrete conveyance" from which pollutants are or may be discharged. 33 U.S.C. § 1362(14).

69. Defendants' Notice alleges that the North Fox Gap Surface Mine's underdrains 1-6 and 8 are point sources subject to regulation under the CWA.

70. Underdrains are created by dumping a layer of rocks along the natural contours of a hollow or valley. Fill material is then pushed on top of the underdrain. Groundwater can flow

around the rocks of the underdrain without impacting the integrity of the fill material. If the fill and underdrain materials were removed, groundwater would still follow the natural topography of the land and converge at the bottom of the hollow or valley. Thus, neither the underdrain nor the hollow fill "channel" or "convey" the groundwater in a manner differently than the natural topography of the land. In essence, the underdrains facilitate the natural process and path by which percolating groundwater would move through a hollow in the absence of a hollow or valley fill.

71. Defendants acknowledge in their Notice that DMLR authorized Red River to remove or relocate the sedimentation ponds and associated outfalls from its NPDES permit. DMLR has never required reclaimed fills and associated underdrains to be permitted as NPDES outfalls. *See* Exhibit B, O'Quinn Decl. ¶ 14. Moreover, DMLR does not have a program by which a mine owner could even voluntarily apply for a NPDES permit for such features. *Id.*

72. As this Court recognized in its decision granting summary judgment for Red River in Defendants' previous attack, "[a]n agency's interpretation of, or finding of facts under, a regulation that it has the authority to enforce is entitled to deference because '[a]dministrtive agencies are simply better suited than courts to engage in such a process.'" *S. Appalachian Mt. Stewards*, 2015 U.S. Dist. LEXIS 48483 at *12, quoting *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 569 (1980). Moreover, an agency's findings are entitled to special deference where the agency's particular technical expertise is involved. *Id.*, citing *Ohio Valley Envtl. Coal. v. U.S. Army Corps of Eng'rs*, 674 F. Supp. 2d 783, 801 (S.D.W. Va. 2009). Thus, DMLR's determination to not require underdrains and hollow fills to be permitted as NPDES outfalls should be afforded special deference.

73. A real, justiciable controversy exists between Red River and Defendants over

whether underdrains 1-6 and 8, and the associated hollow fills, are point sources subject to regulation under the CWA.

74. A declaratory judgment will advance the purposes of the Declaratory Judgment Act by settling a real and concrete controversy over whether underdrains 1-6 and 8, and the associated hollow fills, are point sources subject to regulation under the CWA.

**Count Four:
Declaratory Judgment That Red River is in Compliance
With its NPDES Permit, the Clean Water Act, the Surface Mining
Control and Reclamation Act, and Associated Regulations**

75. Red River re-alleges and incorporates by reference the allegations in Paragraphs 1 through 74 of the Complaint as if fully set forth herein.

76. Defendants assert in their Notice that Plaintiff is violating the requirements of the CWA, SMCRA, associated regulations and Joint CSMO/NPDES Permit 1101401/0081401 at its North Fox Gap Surface Mine, allegations that Red River vehemently denies.

77. DMLR, the Virginia agency charged with issuing and enforcing Joint CSMO/NPDES permits, does not agree that Plaintiff has violated the conditions of Joint CSMO/NPDES Permit 1101401/0081401 at North Fox Gap Surface Mine. *See* Exhibit B, O'Quinn Decl. ¶ 15. As noted above, DMLR's determination is entitled to special deference.

78. Compliance with NPDES permits is deemed to be compliance with the CWA. 33 U.S.C. § 1342(k).

79. All of Defendants' alleged SMCRA violations are predicated on a finding that discharges from Plaintiff's underdrains and associated hollow fills at its North Fox Gap Surface Mine violate the CWA. Specifically, Defendants assert that the discharges violate Virginia's narrative water quality standard.

80. Virginia's narrative water quality standard is not independently binding or enforceable. *See Altamaha Riverkeeper, Inc. v. Rayonier, Inc.*, 2015 U.S. Dist. LEXIS 42849, at *26 (S.D. Ga. Mar. 31, 2015). Rather, it is used for assessing the condition of Virginia's waters under CWA Section 303(d)(1)(A), and for assessing whether particular NPDES permittees (or applicants) have the reasonable potential to cause or contribute to a violation of such standard pursuant to 40 C.F.R. § 122.44(d)(1). When reasonable potential is established, then the permitting agency must impose limits or conditions derived from the standard; however, the standard is not, in itself, enforceable through an NPDES or SMCRA permit.

81. As previously discussed, Red River is in compliance with its Joint CSMO/NPDES Permit 1101401/0081401. Thus, Defendants' assertion that Red River is in violation of Virginia's narrative water quality standard cannot form the basis for its alleged SMCRA violations.

82. Moreover, SMCRA's savings clause provides "[n]othing in [SMCRA] shall be construed as superseding, amending, modifying or repealing . . . [t]he [CWA] . . . the State laws enacted pursuant thereto, or other Federal laws relating to preservation of water quality." 30 U.S.C. § 1292(a)(3). Where the CWA and SMCRA overlap, the CWA's regulatory framework controls. *Sierra Club v. ICG Hazard*, LLC, 781 F.3d 281, 291 (6th Cir. 2015) (holding that a coal company could not be held liable under SMCRA for point source discharges that allegedly violated water quality standards promulgated pursuant to SMCRA where the CWA's permit shield prohibited enforcement against the same point source discharges that formed the basis for claims under the CWA).

83. A real, justiciable controversy exists between Red River and Defendants over whether Red River is violating its CWA permit and thereby the requirements of the CWA,

SMCRA, and their associated regulations at its North Fox Gap Surface Mine.

84. A declaratory judgment will advance the purposes of the Declaratory Judgment Act by settling a real and concrete controversy over whether Red River is violating the requirements of the CWA, SMCRA, and associated regulations and permits at its North Fox Gap Surface Mine.

## PRAYER FOR RELIEF

WHEREFORE, Red River respectfully requests the following relief:

1. A declaratory judgment, pursuant to 28 U.S.C. § 2201, that:

   a. Defendants are barred by *res judicata* from bringing their threatened citizen suit;

   b. the CWA does not regulate discharges of groundwater, even if that groundwater eventually enters surface waters;

   c. underdrains 1-6 and 8, and the associated hollow fills, at Plaintiff's North Fox Gap Surface Mine are not unpermitted "point sources" subject to regulation under the CWA; and

   d. Red River is in compliance with the CWA, SMCRA, associated regulations and Joint CSMO/NPDES Permit 1101401/0081401.

2. An injunction, pursuant to 28 U.S.C. § 2202, enjoining Defendants from filing additional citizen suits against Red River alleging CWA and SMCRA violations associated with discharges from underdrains and hollow or valley fills.

3. Such other relief as the Court may deem just and proper.

Dated: June 30, 2017

Respectfully submitted,

By:   */s/ Brooks M. Smith*
    Brooks M. Smith, Bar No. 40171
    TROUTMAN SANDERS LLP
    Troutman Sanders Building
    1001 Haxall Point
    P.O. Box 1122 (23218-1122)
    Richmond, VA  23219
    Telephone:  804.697.1200
    Facsimile:   804.697.1339
    brooks.smith@troutmansanders.com

Attorney for Plaintiff
Red River Coal Company, Inc.